Deyo, J.
Harry Hall, the testator, died December 24, 1947. He left a last will and testament executed some seventeen years before, wherein he bequeathed his entire residuary estate to his executors and trustees in trust, for the benefit of his wife, his brother, his secretary, his children and their descendants. The widow and all of the children, including a son, who was named as coexecutor and trustee, are seeking to defeat this trust on the grounds that it unlawfully suspends the power of alienation beyond two lives in being. The Manufacturers National Bank of Troy, New York, coexecutor and trustee, seeks to have it upheld. The Surrogate has concluded that the power of alienation is not unlawfully suspended. We have reached the same conclusion.
The testator gave and bequeathed to his executors and trustees all of his residuary estate “IN TBUST, however, to invest and reinvest the same, manage, control, collect and receive the income therefrom, for and during the term of the natural lives of my daughter, LAUBA, and my grandson, HABBY HALL, or the life of the survivor of them; and from the net income so received by my said trustees, to pay out and distribute *76 therefrom, as follows: ’ ’ Thus, it must appear at the very outset that the testator, clearly and specifically and in language most explicit, limited the duration of the trust to two lives in being, at the termination of which all authority of the trustees to collect and receive the income or to otherwise act was concluded.
Next follows testamentary directives for the payment of various sums annually to designated beneficiaries. Payments are directed to be made to the widow so long as she remains unmarried, and upon her remarriage or death, to the children of the testator and/or their descendants. Payments are also directed to be made to testator’s brother and secretary during the terms of their natural lives. We cannot agree with the appellants that the limitation of the payment of income to the lives of these beneficiaries in any way increased or enlarged the trust period. A testator who has limited the duration of his trust to a period of two selected lives in being, as was done here, may make such disposition of the income during that period to as many persons and for as many lives as he sees fit. (Schermerhorn v. Cotting, 131 N. Y. 48.) It was also provided that payments of income should be made to each of testator’s five children, and finally that any surplus of income was to be paid to said children and/or their descendants. Except for the measuring lives of the trust heretofore referred to no period of time during which payments are to be made to the children or their descendants is mentioned. Upon the termination of the trust the principal is bequeathed to the five children surviving and/or their descendants.
Up to this point, the testamentary scheme is clear and valid. A trust is created measured by the lives of testator’s daughter and grandson, with the income therefrom payable to certain named beneficiaries for their respective lives. Upon the expiration of both measuring lives the trust terminates and the principal becomes payable to the five children and/or their descendants.
The Ninth paragraph of the will provides: “ Ninth: Notwithstanding that my daughter, Laura, and my grandson, Harry Hall, or either of them, may be living, I direct and order that the trusts hereby created in and by this will cease and terminate at the expiration of twenty-five years after my death, and that the principal sums, then in the hands of my trustees be paid out and distributed as herein provided, saying, however, that if my wife, my brother Boy, or my secretary Abigail May Bober *77 son, or either of them, may be then living, that then, and in that event, they reserve and keep or maintain under investment such sum or sums as may be required to meet the annuities hereby given to my said wife, my brother Roy and my secretary Abigail May Roberson.”
The appellants contend that the effect of this paragraph is to extend the duration of the trust beyond two lives in being. We do not so interpret the language employed. The paragraph, as we read it, becomes operative only in the event that one or both of the measuring lives are still in existence twenty-five years after testator’s death. Any other interpretation renders the time limitation meaningless, since the trust would have already terminated. What the testator has said is that he wants the trust to end twenty-five years after his death, even though Laura or Harry or both be still living. Such a limitation is entirely valid, since the earlier termination of the trust may be called for by the expiration of the two lives in being. (Matter of Drury, 249 N. Y. 154; Schermerhorn v. Dotting, supra.) Nor is there anything in the remainder of the paragraph which violates the rule against the suspension of the power of alienation. Here the testator has provided that although the trust shall terminate at the expiration of twenty-five years so far as the payments of income to the children and/or their descendants are concerned, if his wife or brother or secretary are then living (i.e., when paragraph Ninth becomes operative), the trustees shall reserve from the principal paid over to the children sufficient sums to meet the payments directed to be made to the three named beneficiaries, or to such one of them as may be living. If neither of the measuring lives are still in existence after twenty-five years then paragraph Ninth never becomes effective. If one or both are still in existence, then the payments of income aré to be continued to such of the three beneficiaries as are still alive, but only so long as the trust remains operative, that is, only so long as a measuring life remains. To read into this paragraph an intention to enlarge the trust period beyond the two measuring lives necessitates a strained and unwarranted construction of the language employed and renders meaningless the earlier provision which specifically limits the life of the trust and the powers of the trustees thereunder to two lives in being.
The other question raised by this appeal concerns the refusal of the Surrogate to approve a proposed compromise whereby the brother and secretary agree not to oppose the efforts of the wife and children to have the trust declared invalid, in consideration *78 of the latter’s promise to pay them the annual amounts which they would receive thereunder. Section 19 of the Decedent Estate Law provides that the Surrogate’s Court may authorize “ the person or persons named as executors ” to compromise controversies between persons claiming as devisees and those who would take by intestacy. “ The persons named as executors ” must be parties to the compromise, except that “ persons named as executors ” who have renounced need not be parties. Approval by the court may be obtained in advance of the actual agreement only if the proposed compromise has been approved “ by the estate representatives.”
The meticulous repetition of the plural throughout the section wherever reference is made to “ executors,” “ administrators ” or “ persons ” cannot be said to be without significance. Similarly, the ruling out of an executor who may have renounced, inferentially at least, indicates a legislative intent that all other executors named must be parties to the agreement and must approve the compromise before the court may even take jurisdiction. This precise point was passed upon in Matter of Wilson (269 App. Div. 665, affd. 294 N. Y. 903). The Appellate Division stated in its decision: ‘ ‘ The Surrogate correctly held that the proffered compromise agreement was governed by section 19 of the Decedent Estate Law and that his court was without power to approve it when one of the executors named in the will was not a party to the agreement and opposed its approval.”
The decree and order should be affirmed.
Foster, P. J., Brewster, Santry and Bergan, JJ., concur.
Decree and order affirmed, with costs to all parties filing briefs, payable out of the estate.